GS2LAW

225 Broadway, 37th Floor
New York, NY 10007
Tel. + 1 212.380.3623
at@gs2law.com

July 23, 2026

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________
DATE FILED: 7/23/2026

**VIA ECF**
Hon. Gregory H. Woods
Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

**MEMORANDUM ENDORSED**

**Re:** Grow Universe, Inc. d/b/a Cafe Melo v. Karen Tshimanga
*Southern District Court of New York – Case No. 1:25-cv-1861-GHW*

Dear Honorable Judge Woods:

As Your Honor is aware, our firm represents the Plaintiff, Grow Universe, Inc. d/b/a Cafe Melo ("**Plaintiff**") in the above-referenced proceeding. In accordance with Section 2.E.ii. of Your Honor's Individual Rules, Plaintiff, together with Defendant Karen Tshimanga ("**Defendant**") jointly submits this pre-motion letter to respectfully request a pre-motion conference with the Court in anticipation of Plaintiff's motion that Defendant: (1) withdraw improper objections and compel responsive discovery in Defendant's possession, custody, or control, (2) return any and all materials concerning Plaintiff's business, and (3) be sanctioned for spoliation of evidence and obstructing discovery, including without limitation, payment of the attorneys' fees of Plaintiff's counsel associated with this request (if granted).

On May 8, 2026 the Court ordered a Civil Case Management Plan and Scheduling Order (ECF No. 53)(the "**Court CMP**"), with fact discovery to be completed no later than September 5, 2026. On May 20, 2026, Plaintiff served its First Set of Document Requests on Defendant. On June 24, 2026, following a brief meet and confer, the Parties stipulated to extend Defendant's deadline to respond and produce from June 20, 2026 to July 6, 2026. On July 6, 2026, Defendant served her written responses and objections, with some production. Yet, Plaintiff found them substantially improper and deficient. Pursuant to Fed. R. Civ. P. 37(a)(1), the Parties held a meet and confer on July 16, 2026 beginning at 2:00 PM EST until around 2:43 PM EST, over videoconference during which counsel (Andrea T. Timpone for Plaintiff, and Ethan Van Buren and Lance Clarke for Defendant) made some progress as to Plaintiff's more minor concerns with Defendant's discovery, but overall, concluded with an impasse on major issues (the "**M&C**").

The M&C mainly addressed the following discovery disputes: (i) Defendant's failure to produce documents in the format Plaintiff requested with attendant meta data; (ii) Defendant's objections to Plaintiff's First Set of Document Requests on vague and generalized bases. Defendant's written objections and responses are attached hereto as **Exhibit A**; and (iii) evidence that Defendant "traded in" devices that had relevant discovery. The Parties respective positions on each item is set forth below.

***i. Defendant's Failure to Produce Documents in the Requested Format***

Defendant's metadata is pivotal to confirm the extent of Defendant's malicious conduct. Plaintiff's Requests included instructions that "Defendant shall produce ESI in its native electronic format

(with original metadata preserved and produced), in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms as the parties may agree pursuant to Rule 34(b)(2)(E)(ii). All emails shall be produced with full header information, including all routing data, IP addresses, message identifiers, and timestamps. All other ESI shall be produced with all associated metadata intact, including, without limitation, creation date, modification date, last-access date, author, custodian, and file path. Defendant did not object to the requested format.

Indeed, Plaintiff and Defendant agreed in their ESI Protocol dated June 1, 2026, to produce ESI (except for "spreadsheets, presentation files, multi-media files, and other native files that cannot be converted to image files") as single paged TIFF images with a DAT load-file that enables the document to be uploaded and viewed using standard litigation support software, including, the preservation of parent-child relationships. Instead, what Defendant produced was a cherry-picked arrangement of screenshots of messages and social media posts devoid of context. Defendant's limited production consists of emails, screenshots, and social media messages converted to PDF or as natives but without critical metadata (like date, time, sender, and recipient). The contents of Defendant's production are frequently arranged in a way that their chronology and relationships are unclear. Most concerningly, in response to Requests for Plaintiff's business materials, Defendant shared a meager number of native files without any historical meta data whatsoever. Not only does this format fail to provide Plaintiff with a critical appreciation of the location where Plaintiff's property is being sourced (custodian), when they were downloaded to Defendant's local devices (if before the deletion of the Business Account), and whether such documents are the final versions or whether they were modified or manipulated by Defendant ex-post facto. During the M&C, Defendant's reasoning for failing to produce in the requested format is because Defendant could not afford an e-discovery provider. Plaintiff's counsel offered to recommend providers that were on the more affordable side but Defendant's counsel indicated that such an exercise would be futile. As such, Plaintiff respectfully asks that the Court order Defendant to re-produce responsive discovery with original metadata intact.

**Defendant's Position:**

Defendant did not disregard the ESI Agreement. She followed the procedure the Order itself prescribes for exactly this situation, and Plaintiff's application asks the Court to compel a re-production that the Order does not require Defendant to fund. **Defendant complied with Paragraph D of the ESI Agreement.** That provision requires a party facing an undue burden to notify opposing counsel and propose an alternative before implementing it. That is what Defendant did. Contemporaneously with the July 6, 2026 production — and before Plaintiff raised any complaint — defense counsel advised Plaintiff's counsel in writing that (i) Ms. Tshimanga could not afford a third-party e-discovery vendor and the documents therefore could not be rendered as TIFFs with load files, (ii) the files had been downloaded from her Google Drive in a manner intended to preserve each document's metadata, and (iii) counsel would work with Plaintiff to resolve anything missing. **The Agreement does not allocate the cost of vendor processing.** A TIFF image carries no metadata; metadata resides in the DAT load file, which exists only if a commercial vendor processes the collection. Plaintiff's application is not about form — it is a request that an individual defendant fund a vendor engagement. Rule 26(b)(1) makes "the parties' resources" an express proportionality factor, and Rule 26(b)(2)(B) relieves a party of the obligation to produce ESI from sources not reasonably accessible because of undue burden or cost. Where a requesting party insists on a form that imposes disproportionate cost on the responding party, the

Court may allocate that expense to the requesting party. Fed. R. Civ. P. 26(c)(1)(B); *see Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317–24 (S.D.N.Y. 2003). **Defendant has proposed a workable middle course.** At the July 16 conference, Defendant proposed a Bates-stamped, text-searchable PDF production in lieu of full TIFF/DAT, which gives Plaintiff Bates numbering and searchability without a vendor, coupled with targeted native-plus-metadata treatment of any specific subset Plaintiff identifies as genuinely metadata-dependent. Plaintiff has not identified that subset. Defendant also consents to a vendor retained by Plaintiff accessing her computer and Google Drive to extract and process responsive files, subject to a reasonable collection protocol and the Stipulated Confidentiality Agreement and Protective Order (ECF No. 56). A party accused of hiding evidence does not offer her adversary's forensic examiner access to her own devices.

**Relief requested.** Defendant respectfully requests that the Court (i) approve the amended production format under Paragraph D of the ESI Order, or, in the alternative, (ii) direct that any vendor-processed re-production proceed at Plaintiff's expense under Rule 26(c)(1)(B), with Defendant providing reasonable access to her devices and accounts. Defendant requests that Plaintiff's fee application be denied and reserves her rights under Rule 37(a)(5)(B).

***ii. <u>Defendant's objections to Plaintiff's Discovery Requests</u>***

Plaintiff served forty-three (43) requests for documents ("**Requests**" or "**RFP(s)**"), of those 43, only seven (7) did Defendant provide any meaningful response. A copy of Plaintiff's RFP(s) is attached as **Exhibit B**. Defendant's written objections and responses to RFPs 1 – 3, 7, 10 – 12, 14, 15, 18 – 20, 25, 28, 30, 33, 37 – 43, fail to satisfy the particularity requirement in violation of Fed. R. Civ. P. 34(b)(2)(C), and do not indicate whether responsive documents are being withheld on the basis of which objection. As such Plaintiff is unable to discern on which basis Defendant is withholding responsive information, determine the scale or scope of withholding, and determine if a further specific motion to compel production is necessary. Defendant also raised improper objections: (a) on a superficial basis of her **privacy** to RFPs 14, 15, 18 – 20, 25, 28, 33, 37, 42, and 43, despite the Court's Protective Order (ECF No. 56); (b) on the basis of "**overly broad**" and "**disproportionate to the needs of the case**" to RFPs 14, 15, 18 - 21, 25, 27 - 29, 32, 33, 37, 42, 43; and (c) on the basis of **relevance** to RFPs 19 – 25, 27, and 28. Plaintiff's Requests were limited to a relatively short timeframe beginning January 1, 2024 through the date of production. Prior to, nor during the M&C, Defendant did not seek to narrowly construe Plaintiff's Requests to alleviate some of Defendant's objections. Moreover, Defendant's written responses and production to the Requests reveal problems that, taken together, cause Plaintiff to question whether Defendant has made a reasonable search for responsive information in her possession, custody, or control, as is her burden. Defendant inaccurately represents non-possession of highly relevant documents within her control that she is clearly refusing to produce. For example, RFP 16 requests "…Documents and Communications concerning the deletion of the Business Account, including without limitation Communications, notes, drafts, or records reflecting Your knowledge of, planning of, participation in, or response to such deletion." Yet, Defendant failed to produce Plaintiff's initial emails requesting to return access to the Business Account and its contents, including, Plaintiff's counsel's demand letter sent to Defendant's email on February 23, 2025.

Presumably in response to RFP 1, Defendant produced KT_EXHIBITS_0265 which includes a password protected link to 140 professional photographs from an event at Plaintiff's business in April 2024. Defendant later wrote from one of her several email accounts, to limit access so that the link be limited to herself and Plaintiff's CEO (presumably at the Business Account address).

Defendant did not produce the 140 photos despite having access and control over those images. This is one of many examples demonstrating that Defendant (while continuing to deny culpability in the harm to Plaintiff's business, simultaneously withholds Plaintiff's property without justification). While counsel for the Parties made some progress to work toward resolving the issue of embedded links containing Plaintiff's property (inaccessible to Plaintiff's counsel), it is questionable how much of Plaintiff's other property is sequestered away by Defendant. Considering Defendant's apparent *modus operandi*, Defendant's failure to produce known relevant and responsive documents within her possession suggests that Defendant is improperly withholding similar relevant and responsive documents outside Plaintiff's purview.

**Defendant's Position:**

**Privacy.** Defendant withdraws her privacy-based objections in light of the Stipulated Confidentiality Agreement and Protective Order entered by the Court on May 20, 2026 (ECF No. 56) and will designate sensitive materials under that Order. The withdrawal of the privacy objection does not resolve overbreadth: a protective order governs how documents are treated once produced; it does not make an unbounded request proportionate.

**Rule 34(b)(2)(C).** To the extent Plaintiff contends that Defendant's responses do not state whether responsive materials are being withheld on the basis of a stated objection, Defendant will serve amended responses, making that statement request by request. That is a matter of form, requires no motion, and was not raised as a request for amendment in this letter.

**Overbreadth, disproportionality, and relevance.** These objections are sound. Rule 26(b)(1) permits discovery of matter "relevant to any party's claim or defense and proportional to the needs of the case." Plaintiff served forty-three requests on a single individual in a case concerning the deletion of one business account. Many requests seek "All Documents" across sweeping categories over a period exceeding two years. Request No. 14 is representative: it demands "All Documents concerning Your activities, location, and use of any Device or internet connection, including without limitation calendar entries, location data, cellular tower records, app usage records, GPS data, screen-time reports, photo metadata, and ride-share or transit records." That is a two-year record of Defendant's physical movements. It is not tethered to any claim or defense and is facially disproportionate. Defendant will produce discoverable documents responsive to reasonably articulated, specific requests.

**Narrowing.** Rule 34(b)(1)(A) requires the requesting party to describe the items sought "with reasonable particularity." Defendant remains willing to confer on narrowed date ranges, custodians, and search terms for any request Plaintiff wishes to press.

**Plaintiff's specific examples do not support a motion.** First, Plaintiff's counsel authored the February 23, 2025 demand letter, which has been in Plaintiff's possession at all times. Fed. R. Civ. P. 26(b)(2)(C)(i). Second, KT_EXHIBITS_0265 was produced as it exists — a gallery link. Defendant does not host the 140 images; they are hosted on a third-party photographer's platform. Defendant is gathering materials accessible through the inoperable or restricted links identified at the conference and will produce them. Plaintiff may also subpoena the host directly. Third, at the July 16 conference defense counsel asked Plaintiff's counsel to identify the specific documents Plaintiff believes Defendant possesses and has not produced, so counsel could direct a targeted search. Plaintiff's first such identification came on July 22, 2026, in the form of a list of four email accounts, which Defendant is addressing. A motion to compel unidentified documents, filed while

that process is underway, is premature and does not reflect the good-faith conferral contemplated by Rule 37(a)(1). Defendant requests that the Court deny the anticipated motion and reserves her rights under Rule 37(a)(5)(B).

***iii. Evidence that Defendant Traded in a Device that Possessed Relevant Discovery***

Plaintiff intends to seek sanctions against Defendant for spoliation of evidence. Defendant and her current counsel were reasonably on notice of anticipated litigation at least as early as February 23, 2025 when Plaintiff's counsel sent Defendant a demand letter (which Defendant's current counsel quickly responded on February 24, 2025) and constructively as of the commencement of this litigation on March 5, 2025. Further, during the May 8, 2026 Initial Pretrial Conference, Your Honor stressed the importance of preserving relevant discovery. However, Defendant's production indicates that Defendant traded-in a device that was factually tethered to Plaintiff's claims (the Samsung SM-S908U Galaxy S22 Ultra 5G) beginning on March 1, 2025. *See,* ***Exhibit C*** *attached hereto, KT_Exhibits_ 0223.* The trade-in began just after the Defendant and her counsel's notice of Plaintiff's claims. The SM-S908U is noted in the fraudulent "Google" communications sent to Plaintiff's CEO's personal email, regarding the very deletion of the Business Account. *See, Second Amended Complaint*, ¶26 (ECF No. 48), *Smith Decl.* ¶12(g) (ECF No. 9), and was used as an identifier by Google LLC to coordinate production of Defendant's IP addresses linked to the Business Account just prior to its deletion.

**Defendant's Position:**

Plaintiff's spoliation theory fails at the threshold because no information was lost.

**Rule 37(e) provides the exclusive framework.** For electronically stored information, Rule 37(e) governs, and the 2015 Advisory Committee Note makes clear that it forecloses reliance on inherent authority to sanction the loss of ESI. The rule applies only where information "that should have been preserved" "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Those predicates are absent.

**No loss.** Ms. Tshimanga upgrades her mobile telephone in the ordinary course when a carrier upgrade becomes available, and in each instance the contents of the prior device are transferred to the successor device before the prior device is surrendered. The material that resided on the Samsung SM-S908U was carried forward in that manner, and Defendant retains the successor device. **No irreplaceability.** The information remains available from at least three sources: the successor device in Defendant's possession, Defendant's cloud accounts, and Google LLC — from which Plaintiff has already obtained records keyed to the very device identifier it says was destroyed. Rule 37(e) does not reach information that can be restored or replaced through additional discovery. **No intent.** Sanctions under Rule 37(e)(2) require a finding that the party "acted with the intent to deprive another party of the information's use in the litigation." A routine carrier upgrade, in which data is migrated rather than destroyed and undertaken before Ms. Tshimanga was named as a defendant in this action, does not support that finding. At most, Plaintiff alleges negligence, which under Rule 37(e)(1) permits only measures no greater than necessary to cure prejudice — and Plaintiff identifies no prejudice, because the data was not lost.

**Defendant's offer.** To close this issue rather than litigate it, Defendant is prepared to (i) submit a declaration describing the upgrade and data-transfer process, including the date of each upgrade, and (ii) make the successor device available for forensic imaging by a vendor of Plaintiff's

choosing, at Plaintiff's expense and subject to the Protective Order. Plaintiff should not be heard to seek termination or inference sanctions regarding data it has been invited to collect.

A sanctions motion on this record would not be substantially justified, and Defendant reserves her right to seek her fees for opposing it. Defendant further notes that she does not join and objects to any characterization in this letter of the conduct of defense counsel, who are not parties and against whom no relief has been sought.

The Parties thank the Court in advance for its time and attention to this matter.

Respectfully submitted,

/s/ Andrea T. Timpone
Andrea T. Timpone
Garson, Ségal, Steinmetz, Fladgate LLP
225 Broadway, 37th Floor
New York, NY 10007
Tel: (212) 380-3623
Email: at@gs2law.com
*Attorneys for Plaintiff*

/s/Lance Clarke
Lance Clarke
HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, NY 10005
Tel: (212) 729-0952
Email: clarke@hcllplaw.com
*Attorneys for Defendant*

Application granted. The Court will hold a teleconference regarding Plaintiff's anticipated motions on July 29, 2026 at 4:00 p.m. The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website. Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 60.

SO ORDERED.

Dated: July 23, 2026
New York, New York

GREGORY H. WOODS
United States District Judge